UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEBRA HINES,**

          Plaintiff,

vs.

**CONSUMERS ENERGY COMPANY,**
**CMS ENERGY CORPORATION,** and
**STACI NOWAK,** jointly and severally,

          Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

There is no other civil action pending in this Honorable Court or any other Court arising out of the same transaction and occurrence.

**NOW COMES** Plaintiff, **DEBRA HINES**, for her Complaint against Defendants Consumers Energy Corporation, CMS Energy Corporation and Staci Nowak, stating the following:

## INTRODUCTION

1. Plaintiff Debra Hines, an African American, was employed with Defendants for approximately thirty-one years without issue until she was terminated in retaliation for speaking up about the discrimination her and other African American employees were facing from their new supervisor, Defendant Staci Nowak. Sadly, Plaintiff's treatment reflected the treatment of similar longstanding older African American employees who were tossed aside while, in comparison, similar Caucasian employees were given second chances, placed in other positions, and allowed to retire with dignity.

Within this Complaint, Plaintiff alleges she was subjected to a hostile workplace, discriminated against, and terminated due her race, age, and in retaliation for protected activity in violation of 42 U.S.C. § 1981 and Michigan's Elliot-Larsen Civil Rights Act, M.C.L. § 37.2101 *et. seq.*

## PARTIES

2. Plaintiff Debra Hines is an African American individual who was employed with the Defendants and resides in Wyoming, Michigan, Kent County.

3. Defendant Consumers Energy Company is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

4. Defendant CMS Energy Corporation is a domestic profit corporation organized under the laws of the State of Michigan and operates within the State of Michigan. Plaintiff was an employee of Defendant.

5. Defendant Staci Nowak is an individual and agent of Defendants. At all times relevant to this lawsuit Ms. Nowak was Plaintiff's supervisor. Upon information and belief, Ms. Nowak resides within the Eastern District of Michigan.

## JURISDICITON AND VENUE

6. This Court has original jurisdiction of Plaintiff's claims under to 42 USC § 1981 pursuant to 28 U.S.C. § 1331.

7. Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

8. This Court is the proper venue pursuant to 28 U.S.C. § 1391(b).

9. Plaintiff has filed a charge with the Michigan Department of Civil Rights/Equal Employment Opportunity Commission alleging racial discrimination, age discrimination, and retaliation. Plaintiff will seek to amend her complaint once issued the right to sue pursuant to Title VII of the Civil Right Act of 1964, 42 U.S.C. §2000 *et seq*.

## GENERAL ALLEGATIONS

10. Debra Hines ("Plaintiff" of "Hines") is a 55-year-old African American woman and a member of a protected class based on her race and age.

11. Plaintiff was employed with Defendants Consumer Energy Company and CMS Energy Corporation (collectively "Defendants") since 1988, approximately thirty-one years, most recently as a senior business consultant/senior field planner analyst.

12. Throughout Plaintiff's decades of employment with Defendants, she received positive performance reviews, no discipline, and was a valued employee.

13. Around November 2017, Plaintiff's supervisor, Geraldine Berry, was disciplined and removed. In lieu of termination, Defendants demoted Berry from her position and placed her in another position until her retirement. Notably, Berry had the same job title as Plaintiff.

14. Geraldine Berry is Caucasian.

15. Around July 2018, Plaintiff's supervisor was replaced by a new state-wide customer service manager Defendant Staci Nowak ("Nowak").

16. Nowak is Caucasian.

17. On information and belief, Nowak was removed from her previous position as a dispatch supervisor due to complaints against her and performance. In lieu of termination, Nowak was given another chance in a new roll.

18. Shortly into Nowak's arrival, Plaintiff noticed that Nowak spoke differently to African American employees and held them to a different standard.

19. Early into Nowak's supervision, a long-time (40+ years) African American coworker, Elizabeth Brenda Lee ("Lee") was forced into retirement.

20. Around this time, Plaintiff was scheduled for an approved leave of absence related to a surgery. Nowak pleaded with Plaintiff to postpone her surgery until an additional business consultant was hired to replace Lee. Plaintiff, a long-time team player, agreed.

21. In January 2019, Plaintiff was notified that she was meeting her expectations as an employee and was given an increase in pay.

22. On or around January 13, 2019, Defendants hired Steven Carroll ("Carroll"), also African American, for the open business consultant position.

23. As with Plaintiff, Carroll quickly noticed the different manner in which Nowak treated African American employees.

24. Plaintiff and her African American coworkers, Carroll and Akasha Richardson ("Richardson") occasionally met and discussed Nowak's harsh treatment towards them. In one instance, the three met following brash comments from Nowak regarding her changing the policies and practice related to hiring and referrals. Nowak's palpable resentment led both Plaintiff and Richardson to tears. After, Plaintiff met with Carroll and Richardson to discuss Nowak's treatment of them. During which, Plaintiff called Nowak and questioned the change in policy and Nowak's handling of the conversation. Nowak simply responded because "that's the way it is" now that she is managing.

25. In February 2019, Plaintiff received a positive performance review for the 2018-2019 year, a score of 95%.

26. In March 2019, Plaintiff applied for a position reporting to Andrew Schneider ("Schneider") but was told she would not be placed in the position because the expectations were for the position to become a field leader. However, the job posting did not reflect Schneider's comment. Schneider hired a young Caucasian male for the position.

27. Plaintiff reported her concerns regarding Schneider hiring a younger white Caucasian over her to corporate compliance.

28. Schneider is a close friend and colleague of Nowak.

29. On or around April 15, 2019, Plaintiff received a text at 3:51 a.m. instructing Plaintiff to come into work at 6:00 a.m., two hours later, for storm duty. Plaintiff, who was ill at the time and utilizing approved intermittent FMLA, followed proper protocol for calling off work.

30. On or around April 17, 2019, Plaintiff met with Nowak and HR Director Tony Chipkewich ("HR Chipkewich") who notified Plaintiff she was being placed on Performance Correction Plan ("PCP"). Nowak read the PCP to the Plaintiff. The PCP came as a shock to the Plaintiff as this was the first significant disciplinary actions against her in her entire thirty-one years of her employment with Defendants. Plaintiff felt the PCP was validation she was being treated hostile due to her race.

31. Plaintiff was placed on the PCP at the recommendation of Nowak.

32. Plaintiff reached out to HR employee Lindsay Barsaleau ("HR Barsaleau") for advice about how to approach Nowak as Plaintiff felt she was being set up and had never been treated this way in over thirty years with the company.

33. On April 18, 2019, Plaintiff emailed Nowak's supervisor, Richard Woolford ("Woolford") expressing that Nowak was intentionally setting her up to fail.

34. After being placed on the PCP, Nowak's hostility towards Plaintiff increased dramatically.

35. On or around April 18, 2019, during the weekly PCP check in, Nowak scolded Plaintiff regarding missing storm duty on April 15—despite following protocol. Plaintiff responded that she found Nowak's concerns unreasonable and troubling. Further, that she felt other employees were not held to this scrutiny. Plaintiff questioned what the alleged violation was, however, Nowak responded that she refused to answer any of Plaintiff's questions anymore without HR present.

36. Plaintiff was frustrated by the comment as she worked hard on storm duty for years, even one instance when she had a broken leg.

37. Further, Nowak refused to discuss the reasoning for the PCP with Plaintiff. Plaintiff reached out to Defendants' human resources department to discuss how Nowak was bullying Plaintiff and making false allegations against her.

38. Additionally, Plaintiff sought an appeal of her placement on the PCP.

39. Following the PCP, Plaintiff had one on one meetings with Nowak. During these meetings, Nowak provided little to no indications of ongoing issues or recommendations for Plaintiff. Further, Nowak never indicated whether Plaintiff's alleged performance issues persisted, and, if so, how she could improve them.

40. It was Plaintiff's view that Nowak was setting her up to be terminated.

41. Nowak also insisted that Plaintiff circumvent the company Defendants utilized for contractors, Pro-Unlimited, to discuss performance issues directly with contractors—against policy.

42. During this period, Plaintiff reported the harassment and disparate treatment she was receiving from Nowak to Defendants' corporate compliance office. Plaintiff specifically stated that she believed the treatment to be due to her race.

43. In May 2019, Nowak's supervisor, Woolford, questioned Carroll, an African American coworker also supervised by Nowak, about Plaintiff's claims that Nowak was being difficult with African American employees. Carroll affirmed Plaintiff's sentiment and stated that he, and other African American employees, felt that Nowak was more comforting to Caucasian employees within the company than them[1].

---

[1] Notably, Mr. Carroll has filed a companion federal lawsuit alleging that he was subjected to a racially hostile work environment and received disparate treatment by Nowak. Further, Carroll alleges that his participation in the investigation of Plaintiff's complaint led to retaliation against him which, similar to Plaintiff, led to his placement on a PCP and eventual termination. *See. Carroll v. Consumer Energy Company et. al.*, Case 2:21-cv-11238 (Hon. Michelson)

44. On information and belief, Nowak was notified or otherwise became aware of that Plaintiff submit the complaint of racial discrimination and harassment against her.

45. On or around July 3, 2019, Plaintiff was informed her PCP was being extended due to Nowak being out of the office with a surgery. However, Nowak stated to Plaintiff that "the last three months have shown great improvement." HR Barsaleau was present for the conversation.

46. Plaintiff emailed HR Chipkewich and Rebecca Kosnik asking why her PCP was being extended as a result of Nowak's medical condition and was assured that the extension was not punitive. At this point, Plaintiff had received no indication that any performance issues persisted.

47. Shortly after, Nowak's close friend and colleague, Schneider, falsely reported that Plaintiff refused to come into work on the Fourth of July. Plaintiff provided concrete proof that this was false. Plaintiff was notified by Defendant Executive Director Douglas Detterman ("ED Detterman") that Schneider would be questioned regarding his false allegations then, after would reach out to Plaintiff. On information and belief, this never occurred. Further, Plaintiff was never compensated for the day. Reasonably, Plaintiff viewed this as part of a continued action to justify her termination.

48. On July 15, 2019, Plaintiff received a written response from the Compliance Department, specifically David Corravo, notifying her that their

9

investigation of her complaint of racial discrimination and harassment was complete. The investigation found Plaintiff's claims to be unsubstantiated.

49. Plaintiff went on a scheduled vacation on July 24, 2019.

50. Plaintiff returned to work on August 2, 2019 and was asked to meet with ED Detterman and HR Chipkewich who presented Plaintiff with a termination letter allegedly for failing to meet her PCP and Plaintiff's "failure to lead people effectively."

51. On information and belief, it was Nowak's decision to terminate Plaintiff.

52. Plaintiff requested a different position in which she would not be supervised by Nowak but was denied. However, at least two Caucasian comparators were previously removed from their leadership roles due to alleged leadership issues and given other positions.

53. On information and belief Plaintiff was replaced by a younger individual who is not African American.

54. On September 10, 2019, Plaintiff submitted a charge of racial discrimination, age discrimination, and retaliation with the Michigan Department of Civil Rights. On information and belief, Plaintiff's discrimination charge is still pending. Plaintiff will amend this complaint once he has obtained the right to sue pursuant to Title VII.

## COUNT I
## RACIAL DISCRIMINATION - 42 U.S.C. § 1981

55. All preceding paragraphs are incorporated by reference.

56. Plaintiff is a member of a protected minority class on the basis of her race.

57. As an employee, Plaintiff had a contractual employment relationship with Defendants.

58. During the course of Plaintiff's employment with Defendants, Defendants violated Plaintiff's rights by depriving him of her right to the enjoyment of all benefits, privileges, terms and conditions of employment "as is enjoyed by white citizens," in violation of 42 U.S.C. § 1981(b), as amended.

59. Plaintiff was treated differently than her Caucasian comparators.

60. Plaintiff was denied promotions and transfers due to her race.

61. Plaintiff was terminated due to her race.

62. Plaintiff alleges that her termination is in violation of her right to make and enforce contracts pursuant to 42 U.S.C. § 1981.

63. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT II
## HOSTILE WORK ENVIRONMENT - 42 U.S.C. § 1981

64. All preceding paragraphs are incorporated by reference.

65. Plaintiff was subject to unwelcome harassment and discriminatory treatment based on her race.

66. The work environment was abusive for Plaintiff.

67. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

68. Defendants were aware of the harassment and abuse Plaintiff was facing and failed to act.

69. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT III
## RETALIATION - 42 U.S.C. § 1981

70. All preceding paragraphs are incorporated by reference.

71. Plaintiff engaged in activity protected by 42 U.S.C. § 1981 when she complained of the racial discrimination he was subjected to in the workplace.

72. Defendants retaliated against Plaintiff due to this protected activity.

73. Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

74. Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

75. Defendants' termination of Plaintiff's employment on this basis violates 42 U.S.C. § 1981.

76. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and has incurred attorney fees.

## COUNT IV
## RACIAL DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

77. All preceding paragraphs are incorporated by reference.

78. At all relevant times, Plaintiff and Defendants were covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq*.

79. Defendants treated and disciplined Plaintiff different than similarly situated Caucasian employees.

80. Plaintiff's race was a factor that made a difference in Defendants' decision to terminate Plaintiff.

81. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

82. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT V
## RACIAL DISCRIMINATION (HOSTILE WORK ENVIRONMENT) ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

83. All preceding paragraphs are incorporated by reference.

84. Plaintiff faced severe harassment in the workplace due to her race.

85. The harassment and discriminatory treatment Plaintiff was subjected to was severe enough to alter the conditions of her employment.

86. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

87. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the

ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VI
## RETALIATION - ELLIOT-LARSEN CIVIL RIGHTS ACT, M.C.L. § 37.2101 *et. seq.*

88. All preceding paragraphs are incorporated by reference.

89. Plaintiff engaged in protected activity when she complained of the racial discrimination she was subjected to in the workplace.

90. Defendants retaliated against Plaintiff due to this protected activity.

91. Defendants began holding Plaintiff's performance to a different standard in retaliation for this protected activity.

92. Defendants terminated Plaintiff in retaliation of Plaintiff's protected activity.

93. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss of vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## COUNT VII
## AGE DISCRIMINATION - ELLIOT-LARSEN CIVIL RIGHTS ACT M.C.L. § 37.2101 *et. seq.*

94. All preceding paragraphs are incorporated by reference.

95. Plaintiff is a member of a protected class due to her age.

96. Defendants treated and disciplined Plaintiff different than similarly situated younger employees.

97. Plaintiff's age was a factor that made a difference in Defendants' decision(s) to deny her promotions and transfers.

98. Plaintiff's age was a factor that made a difference in Defendants' decision to terminate Plaintiff.

99. Defendants' actions were intentional, with reckless indifference and in disregard of Plaintiff's rights and sensibilities.

100. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, but not limited to, loss of pay, loss vacation and sick days, loss of career opportunities, humiliation and embarrassment, mental anguish and emotional distress, loss of professional reputation, and loss of the ordinary pleasures of everyday life, including the right to pursue gainful occupation of choice and incurred substantial liability for attorney fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a. Declare that the aforementioned practices and actions of Defendants constitute unlawful practices in violation of § 1981, and ELCRA;

    b.    Award Plaintiff all lost wages and benefits, past and future, to which she is entitled;

    c.    Award Plaintiff appropriate equitable relief;

    d.    Award Plaintiff compensatory damages;

    e.    Award Plaintiff punitive damages;

    f.    Award Plaintiff reasonable attorney fees, costs and interest; and

    g.    Award such other relief as this Court deems just and proper.

Respectfully submitted,

By: /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*

DATE: January 11, 2022

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DEBRA HINES,**

      Plaintiff,

vs.

**CONSUMERS ENERGY COMPANY,
CMS ENERGY CORPORATION,** and
**STACI NOWAK,** jointly and severally,

      Defendants.

Case No.

Hon.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorneys for Plaintiff*
_____/

## **DEMAND FOR TRIAL BY JURY**

Plaintiff Debra Hines hereby demands for a trial by jury.

      Respectfully submitted,

      By: /s/ Jack W. Schulz
      Jack W. Schulz (P78078)
      SCHULZ LAW PLC
      PO Box 44855
      Detroit, MI 48244
      (313) 246-3590
      jackwschulz@gmail.com
      *Attorneys for Plaintiff*

DATE: January 11, 2022